**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

--------------------------------------------------------------- x

**DEVRY INC.** and **GLOBAL EDUCATION**      :
**INTERNATIONAL, INC.,**                      :
                                              :
                                              :  **Hon. David H. Coar**
      Plaintiffs,                             :
                                              :  **No. 08-CV-3280**
              v.                              :
                                              :  **Magistrate Judge Keys**
**UNIVERSITY OF MEDICINE AND**                :
**HEALTH SCIENCES—ST. KITTS**,                :
                                              :
      Defendant.                              :
--------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**ARGUMENT**

Defendant University of Medicine and Health Sciences—St. Kitts ("UMHS")

respectfully submits this reply memorandum of law in support of its motion to dismiss the

Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be

granted.

Plaintiffs' opposition to the motion rests upon four legally erroneous arguments:

• That the fair use defense is not applicable to Plaintiffs' unfair competition and state law claims,

- That Plaintiffs' Complaint alleges sufficient facts to state a plausible claim for trademark infringement and unfair competition,

- That UMHS's use of the phrase "Founded by Dr. Robert Ross" is a trademark use of the name Dr. Robert Ross, and

- That UMHS's references to the fact that Dr. Robert Ross was the founder and former owner of Ross University is not a fair use of the Plaintiffs' Ross University mark.

As set forth below, the Plaintiffs' Complaint clearly pleads only that UMHS's use of the phrase "Founded by Dr. Robert Ross" to refer to its founder and its references to the fact that Dr. Ross was the founder and former owner of Plaintiffs' Ross University are an infringement of Plaintiffs' registered trademarks and unfair competition. These allegations viewed in a light most favorable to Plaintiffs do not state a plausible claim for trademark infringement or unfair competition because these uses, as a matter of law, are protected fair uses. Accordingly, the Complaint must be dismissed for failure to state any claim upon which relief may be granted pursuant to FRCP Rule 12(b)(6).

A.     **The Fair Use Defense Applies to Claims of Common Law Unfair Competition and Related State Law Claims**

Plaintiffs make a specious argument that the fair use doctrine does not apply to Plaintiffs' common law claims for unfair competition and claims for violation of the Illinois Uniform Deceptive Trade Practices Act and Consumer Fraud and Deceptive Business Practices Act. Clearly, claims for unfair competition under federal and state law, unfair trade practices under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act, are governed by the same principles of likelihood of confusion as claims for trademark infringement under the Lanham Act. *McGraw-Edison Co. v. Walt Disney Prods.*,

787 F.2d 1163, 1174 (7th Cir. 1986); *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627

(7th Cir. 1968), *cert. denied*, 392 U.S. 927 (1968) *Bob Creeden & Associates, Ltd. v. Infosoft,*

*Inc.*, 326 F.Supp.2d 876 (N.D. Ill.2004)

The fair use defense set forth in the Lanham Act, 15 U.S.C. § 1115(b)(4) (which

technically only applies to incontestable federally registered trademarks) is merely a codification

of the common law defense of fair use and is applicable to claims of unfair competition.  *M.B.H.*

*Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50 (7th Cir. 1980)(applying the fair use doctrine to

dismiss claims of trademark infringement as well as related claims for unfair competition) citing

*Venetianaire Corp. v. America v. A&P Import Co.*, 429 F.2d 1079 (2d Cir. 1970)("The 'fair use'

defense explicitly described in [15 U.S.C.§ 1115(b)(4)] approximates a statutory restatement of

the corresponding common law defense….."); *See also,. Ty, Inc. v. Publications Intern, Ltd.*,

2005 U.S. Dist. LEXIS 23420 (N.D. Ill., February 25, 2005)(holding that the fair use defense

under the Lanham Act analysis was dispositive of claims under the Illinois Deceptive Practices

Act) (copy of case submitted with Defendant's initial Memorandum).  There is no serious

question that the common law fair use defense as broadly described in the Lanham Act, 15

U.S.C.§ 1115(b)(4), applies to all of Plaintiffs' state law claims of unfair competition and claims

under the Illinois state statutes alleged in the Complaint as well as to Plaintiffs' claims under the

Lanham Act.

B.    **The Complaint Does Not Allege Sufficient Facts to State a Plausible Claim
      for Trademark Infringement or Unfair Competition**

Plaintiffs argue, based on this Court's recent decision in *Heisner v. Genzyme*

*Corporation*, 2008 WL 2940811 (N.D.Ill., July 25, 2008) and the Court of Appeals' decision in

3

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008), that their Complaint is sufficient because the plaintiffs pleaded enough facts to give UMHS fair notice of its claims and because the fair use defense is not an "impenetrable" defense.  This discussion obfuscates the basic fact that plaintiffs' Complaint exclusively pleads only two types of allegedly infringing uses by UMHS.  Those uses are clearly described in the Complaint ¶ ¶ 47-54 and examples of each use are attached to the Complaint and must be considered part of the Complaint for purposes of this motion (Complaint, Exs. G-L).  The two uses are the use of the phrase "Founded by Dr. Robert Ross" to refer to UMHS and UMHS' use of the Plaintiffs' "Ross University" trademark to describe the history and background of Dr. Robert Ross.  The question on this motion is whether the Complaint states a plausible claim for relief, given that the only uses of the name Ross by UMHS alleged in the Complaint are legally protected fair uses.

        This case does not involve ambiguous allegations of conduct that might or might not give rise to a cognizable claim as was the case in this Court's decision in *Heisner v. Genzyme Corporation, supra*.  Nor does this case involve the issue of whether a plaintiff has pleaded himself out of court by alleging circumstances that factually give rise to an affirmative defense as was the case in *Tamayo v. Blagojevich, supra*.  The facts alleged in this Complaint are unambiguous and the Court may decide as a matter of law whether conduct that UMHS alleged in the Complaint is 1) a protected fair use of its founder's name and 2) a protected "nominative" fair use of the "Ross University" trademark in connection with describing the prior accomplishments of Dr. Robert Ross.

Plaintiffs' argument that there are broader allegations in the Complaint of other unspecified infringing actions is also not a sufficient basis for denial of this motion. The only paragraphs of the Complaint referenced by Plaintiffs state only the legal conclusion that UMHS uses the designation "Ross" in a trademark sense ¶ 46 (which the Court can determine as a matter of law from the factual allegations and examples of such appended to the Complaint); that UMHS has made numerous unspecified statements which trade on the reputation of Ross University ¶ 49 (this allegation appears also to refer to the uses described in the factual allegations of the Complaint and to the examples appended to the Complaint) and that UMHS has stated that the success of Ross University means that UMHS will be a success as well ¶ 50. None of these conclusory allegations give Defendant notice of any conduct other than the conduct described in the rest of the Complaint and the examples attached to the Complaint and, if these factual allegations and examples, do not establish a plausible claim for trademark infringement or unfair competition, the Complaint must be dismissed. *See, e.g.*, *Heisner v. Genzyme Corporation*, *supra*, at p. 7:

"Post-*Twombly*, the federal pleading standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, ---U.S.---, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). The Seventh Circuit has indicated that the factual content of a claim may be too "sketchy" to put a defendant on notice. *Killingsworth*, 507F.3d at 619. In this case, Plaintiff has offered nothing more than a formulaic recitation of the elements required to prevail on a claim and has alleged no facts at all that suggest that a warranty exists."

Clearly, by this standard, Plaintiffs' argument that "Plaintiffs could prevail on the merits by proving entirely different examples of the behavior described by [the Complaint]" (Plaintiffs' Memorandum, p.4) is incorrect. The legal sufficiency of the Complaint must be judged by what is alleged in the Complaint and not by "entirely different examples of behavior" that are not

5

described or alleged anywhere in the Complaint.  If the only conduct factually alleged in the Complaint constitutes protected fair use, then the Complaint must be dismissed and can not be allowed to stand based upon conclusory allegations that might apply to "entirely different" conduct than what is alleged in the Complaint.

C.     **The Phrase "Founded by Dr. Ross" is not a Trademark Use of the Name Ross**

The Lanham Act's "fair use" defense (15 U.S.C. § 1115(b)(4)) provides an absolute defense to a claim of trademark infringement for an individual using his name other than as a mark in his business, as well as a qualified defense for a party using a descriptive term other than as a mark to fairly and in good faith describe his products.  In this case, UMHS's use of the phrase "Founded by Robert Ross" on letterhead, its website or in a sign is a clearly not a use as a trademark.  Plaintiffs argue that the question of whether a party is using a name or designation as a trademark is a question of fact citing *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995) and *Packman v. Chicago Tribune*, 267 F.3d 628 (7th Cir. 2001).  In both of those cases, the Court of Appeals found that the defendant's use of the mark was a fair use based upon nothing more than the Court's review of the manner of the use.  In *Sunmark* the Court affirmed the denial of a preliminary injunction, in part, because of its view that the defendant's use of "sweet-tart" was a descriptive use noting "the possibility that after full proceedings the trier of fact will disqualify [defendant's] employment of "sweet-tart" from the fair use defense by calling it a trademark is too remote to support a preliminary injunction.  64 F.3d at 1059. Similarly, in *Packman* the Court affirmed the lower court's grant of summary judgment deciding that the Chicago Tribune's use of the phrase "joy of six" under its well known masthead was not

6

a trademark use on its face because the Chicago Tribune masthead designated the source of the

products in the same way that the University of Medicine and Health Sciences—St. Kitts

"masthead" designates the source of its services. 273 F.3d 639-640.

Defendant's trademark is the University of Medicine and Health Sciences—St. Kitts.

The phrase "Founded by Dr. Robert Ross" is merely descriptive of the individual who founded

the school.  Plaintiffs' argument that this phrase identifies the source of the school's services is

misleading.  The source identifier is the University of Medicine and Health Sciences or UMHS.

The fact that UMHS wants to identify its founder does not make this the "Robert Ross" school

and the use of the phrase "Founded by" is sufficient to distinguish the name Dr. Robert Ross

from the actual name or trademark for the school's services.  There is a difference between using

"Robert Ross" as the source identifier for the school and using "Robert Ross" to identify the

person who is responsible for establishing the school.

In this regard, the two cases cited by Plaintiffs from the Second Circuit are instructive.  In

*Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814, 822 (2d. Cir. 1986), a well

known designer of stereo equipment, Mark Levinson, had sold his business and the Mark

Levinson trade name and trademark to Madrigal.  After Mr. Levinson began using his name in

connection with stereo equipment being manufactured and sold by his new company Cello,

Madrigal sued for trademark infringement and unfair competition.  The Second Circuit reversed

a district court injunction, *inter alia*, that had prohibited the defendant from generating any

publicity regarding Mark Levinson's relationship with his new company or his past relationship

with the plaintiff because of the Court's view that even if a personal name has become a trade

7

name, "it continues to serve the important function to its bearer as acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated".  The Second Circuit found that a court would not bar him from using his name unless his intention to convey an exclusive right to the use of his own name to the plaintiff was "clearly shown".  *Id.*

Similarly, the *sine qua non* of the Magistrate Judge's decision in *JA Apparel Corp. v. Abboud*, 28 WL2329533 (S.D.N.Y., June 5, 2008) was its finding that the famous men's clothing designer, Joseph Abboud, had explicitly sold the exclusive rights to use the trademarks, logos and designations containing the words "Joseph Abboud", "designed by Joseph Abboud", "by Joseph Abboud" or anything similar or derivative thereof to the plaintiff.  *Id.* at p. 2. ("Finally, it is very difficult, if not improper, to completely ignore the Agreement in the context of  Abboud's "fair  use" defense." at p.7).  Plaintiffs' Complaint makes no allegations whatsoever about the sale of the "Robert Ross" name to Plaintiffs and certainly no allegations that Plaintiffs were granted the exclusive rights to use the name.  Failing such allegations, UMHS is clearly entitled to say that Dr. Robert Ross is its founder.

This case is analogous to *Hensley Mfg., Inc. v. Propride, Inc.*, 2008 WL 2514060 (E.D.Mich., June 19, 2008) in which the district dourt dismissed the plaintiff's complaint for trademark infringement and unfair competition for failure to state a claim.  Plaintiff alleged that it had licensed the "Hensley Arrow" and "Hensley" trademarks for trailer hitches from James Hensley and that it had subsequently purchased the Hensley trailer hitch business from Mr. Hensley.  Sometime later, Mr. Hensley designed a new trailer hitch that he licensed to the

8

defendant Propride who advertised the trailer hitch by stating that Mr. Henley was the designer

of the hitch and by providing a history of James Hensley.  The district court dismissed the

complaint on the grounds that the alleged use of the James Hensley name in Propide's

advertising was a descriptive non-trademark use that was a legally protected "fair use" of the

Hensley name citing the Second Circuit's *Madrigal* decision.  *Hensley*, *supra*, at p. 4. The court

also found on the pleadings that no viable claim for breach of contract had been alleged against

Hensley. *Id.* at p. 5.  *A fortiori*, where no claim for breach of contract and no claim for exclusive

rights in the name "Dr. Robert Ross" has been alleged, the Complaint, to the extent that it rests

upon an allegation of infringement arising from the use of the phrase "Founded by Dr. Robert

Ross" or similar descriptive phrases, must be dismissed.  2

   **D.    UMHS's References to Ross University are a Protected Nominative Fair Use**

           Plaintiffs' argument appears to concede that UMHS's references to the fact that Dr.

Robert Ross was also the founder and former owner of Ross University could be a protected

nominative fair use.  Plaintiffs accept that the nominative fair use defense applies when

defendant uses the plaintiff's trademarks to refer to the plaintiff or its goods and services citing

the Ninth  Circuit's leading decision in *New Kids on the Block v. News Am. Publ'g*, 971 F.2d 302

(9th Cir. 1992).[1]  Plaintiffs therefore concede that the first prong of the three part test for

nominative fair use in *New Kids on the Block* is satisfied here.   Instead, Plaintiffs argue that

UMHS has failed to establish that it has used only so much of the mark as is reasonably

---

[1] Plaintiffs correctly point to a typographical error in Defendant's moving brief.  The nominative
fair use doctrine applies to defendant's use of the plaintiff's mark to refer to the plaintiff or its
services.

necessary to identify the product or service and that it has not done anything, in conjunction with the mark, to suggest sponsorship or endorsement by the trademark owner--- the second two prongs of the three-part test for nominative fair use developed by the Ninth Circuit. *Id.*. As discussed below, these two factors also are satisfied.

The Seventh Circuit has never explicitly adopted the Ninth  Circuit test for nominative fair use although it has been applied by a few Judges in this District. *See, e.g. Ty, Inc., supra*, 2005 U.S. Dist. LEXIS 23420 at p. 19.  Other Circuits have reached the same result by use of their traditional likelihood of confusion tests although there is an issue about whether a likelihood of confusion analysis is correct after the Supreme Court's decision in *KP Permanente Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 125 S.Ct. 542 (2004).  *See, e.g.*, *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222-223 (3d Cir. 2005)(after that decision [KP Permanente], it seems to us that neither classic or nominative fair use should rise and fall based on a finding of likelihood of confusion.").   *See also,* Judge Zagel's discussion of the issue in *Ty, Inc.*, *supra*, 2005 U.S. Dist. LEXIS 23420 at pp. 16-19.

The only allegations or evidence cited by Plaintiffs to support their argument that UMHS is making an excessive use of its mark are a paragraph that appears in the UMHS brochure about its founder Dr. Ross and a paragraph in a letter from UMHS.  The cited passages are quoted in relevant part below:

"Dr. Robert Ross, founder and former owner of Ross University School of Medicine, is excited to announce the opening of his new medical school in January 2008.  Back in 1979, Dr. Ross was one of the first pioneers in developing an offshore medical school.  Under his guidance, Ross University grew into one of the largest medical and veterinary schools in the world.  His reputation in academic institutions and dedication to excellence is known worldwide. Thousands of students have graduated from Ross and are now licensed and practicing in the

10

United States.  Dr. Ross is no longer affiliated with Ross University, but he does intend to apply his experience, knowledge, and resources in developing the University of Medicine and Health Sciences, St. Kitts (UMHS)." (Ex. I to the Complaint at p. 3)

"Dr. Robert Ross, founder and former owner of Ross University School of Medicine, is excited to announce the opening of his new medical school.  Back in 1979, Dr. Ross was one of the first pioneers in developing an off-shore medical school.  Under his guidance, Ross University grew into one of the largest medical and veterinary schools in the world.  His reputation in developing academic institutions and dedication to excellence is known world-wide.  Thousands of students have graduated from Ross University and are now licensed and practicing in the United States.  Dr. Ross is no longer affiliated with Ross University, but he does intend to apply his experience, knowledge and resources in developing the UMHS." (Ex. L to the Complaint at p. 1)

These passages do not go beyond what is necessary to identify Ross University as the school that Dr. Ross had previously founded and then sold.  Plaintiffs complain about the number of references to Ross University in these paragraphs and yet it is clear from reading the paragraphs that some of the additional references are disclaimers of any present association between Dr. Ross and Ross University.  This factor speaks to whether the use of Plaintiffs' mark is done in a way that would be confusing as to an association or affiliation between Plaintiffs and Defendant.  The explicit statement that Dr. Ross is the former owner of Ross University and is no longer affiliated with Ross University is sufficient to dispel any such confusion to all but the most feeble-minded reader.

The few cases that have discussed this factor in the *New Kids* test for nominative fair use generally deal with the question of whether the defendant has displayed the plaintiff's mark in a prominent manner, *Brother Records, Inc. v. Jardine*, 318 F.2d 900 (9th Cir. 2003), or in another manner that would create the impression that the plaintiff is affiliated with or endorsing the defendant's product. *Ty, Inc. v. supra.*, 2005 U.S. Dist. LEXIS 23420 at pp. 25-27. (N.D. Ill.,

11

February 25, 2005)(holding that there was an issue of fact regarding this factor for nominative fair use where the defendant had used plaintiff's "Beanie Babies" mark in the title of its publications in a different, stylized format that emphasized "Beanie Babies" ), *Compare*, Cairns v. Franklin Mint Co., 292 F.3d 1139 (9th Cir. 2002)(holding that the prominent reference to Princess Diana in the title of defendant's product was fair use).

UMHS's references to Ross University in its brief biography of Dr. Robert Ross do not have any of the elements that have concerned the courts regarding this first factor. The references are not excessive in the context of explaining who Dr. Ross is and what his connection with Ross University was. Nor has the Ross University name has been highlighted in any way that would suggest that Ross University is endorsing UMHS.

The last factor from the New Kids test, i.e. whether Defendant has done anything else to suggest a sponsorship or endorsement by Plaintiffs, also favors dismissal of the Complaint. In identical circumstances, Judge Zagel found in Ty, Inc. *supra*., that defendant's use of a disclaimer of any relationship with the Beanie Babies plaintiff was sufficient to satisfy this third prong of the New Kids nominative fair use defense even though there were issues as to whether the second prong relating to the prominence of the use had been satisfied by defendant) 2005 U.S. Dist. LEXIS 23420 at p. 29. *See also*, *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002).

Every instance of UMHS's use of the Plaintiffs' Ross University trade name or mark that is alleged in the Complaint contains an explicit disclaimer that Dr. Ross is no longer affiliated with Ross University or that he is the former owner of Ross University and there is no other

12

factual basis shown in the Complaint to suggest that UMHS has done anything else to suggest a

sponsorship or endorsement by Plaintiffs. See Point B above.2

<u>**CONCLUSION**</u>

Plaintiffs have failed to allege any plausible claim that UMHS's use of the phrase

"Founded by Dr. Robert Ross" to refer to its founder or its references to "Ross University" in its

biographical descriptions of Dr. Ross are an infringement of its trademark or a violation of any

common law or state statutory rights and the Complaint should therefore be dismissed pursuant

to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.
J. Christopher Jensen
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

SMART & BOSTJANCICH

By: _s/ Patricia S. Smart_
Patricia S. Smart
John Bostjancich
19 South LaSalle Street
Chicago, Illinois
(312) 857-2424

Attorneys for Defendant

---

[2] Plaintiffs' Memorandum (at p. 8) faults UMHS for not acknowledging the additional examples of references to Ross University attached as Exhibits J and K to the Complaint. Exhibit J is an identical copy of the biographical sketch of Dr. Ross that appears in Exhibit I and Exhibit K is a job advertisement in which UMHS is described as having been founded by Dr. Robert Ross, the founder and <u>former</u> owner of Ross University (emphasis added). As such, these examples are not materially different from the other examples of use discussed above.

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of a true and correct copy of Reply Memorandum Of Law In Support Of Defendant's Motion To Dismiss The Complaint is being accomplished pursuant to ECF as to the following Filing User:

> Arne Olson, Esq.
> OLSON & HIERL, LTD.
> 20 North Wacker Drive
> 36th Floor
> Chicago, Illinois 60606

this 26th day of August, 2008.

> s/ Patricia S. Smart
> PATRICIA S. SMART

14

27331/000/840952.1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ---------------------------------------------------------------- | x | |
| **DEVRY INC.** and **GLOBAL EDUCATION** | : | |
| **INTERNATIONAL, INC.,** | : | |
| | : | **Hon. David H. Coar** |
| Plaintiffs, | : | |
| | : | **No. 08-CV-3280** |
| v. | : | |
| | : | **Magistrate Judge Keys** |
| **UNIVERSITY OF MEDICINE AND** | : | |
| **HEALTH SCIENCES—ST. KITTS,** | : | |
| | : | |
| Defendant. | : | |
| ---------------------------------------------------------------- | : | |
| | x | |

APPENDIX OF CASE LAW FROM ELECTRONIC DATABASES
FIRST CITED IN DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

*Hensley Mfg., Inc. v. Propride, Inc.*, 2008 WL 2514060 (E.D. Mich. June 19, 2008)

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2008 WL 2514060 (E.D.Mich.)
**2008 WL 2514060 (E.D.Mich.)**

Hensley Mfg., Inc. v. Propride, Inc.
E.D.Mich.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan,Southern
Division.
HENSLEY MANUFACTURING, INC., Plaintiff,
v.
PROPRIDE, INC., Sean Woodruff, and James C.
Hensley, Defendants.
**Civil Case No. 08-10425.**

June 19, 2008.

Marshall G. MacFarlane, Craig A. Redinger, Young
Basile, Ann Arbor, MI, for Plaintiff.
John F. Early, Jr., Southfield, MI, Josh J. Moss,
Barris, Sott, Detroit, MI, for Defendant.

*OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS AND
DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION*

MARIANNE O. BATTANI, District Judge.

**I. INTRODUCTION**

*1 Before the Court are Plaintiff's Motion for
Preliminary Injunction (Doc. No. 18), Defendant
Hensley's Motion to Dismiss (Doc. No. 9), and
Defendants Propride and Woodruff's Motion to
Dismiss (Doc. No. 13). Plaintiff Hensley
Manufacturing, Inc., has filed suit against Defendants
for statutory and common law trademark
infringement, unfair competition, breach of contract
(against Hensley), misappropriation of trade secrets
(against Woodruff and Propride) and tortious
interference with a business relationship.

Plaintiff, the manufacturer of a trailer hitch called the
"Hensley Arrow", is seeking to preliminarily enjoin
all Defendants from using Defendant James
Hensley's name in connection with the sale or
advertising of their product. Defendants are seeking
to dismiss Plaintiff's complaint for failure to state a
claim; Defendant Hensley argues that under the plain
terms of the contract between him and Plaintiff there

has been no breach, while Defendants Propride and
Woodruff (the "Propride Defendants") argue that
Plaintiff has alleged no acts of trademark
infringement. For the reasons stated below, the Court
grants the motions to dismiss and denies the motion
for preliminary injunction.

**II. STATEMENT OF FACTS**

Plaintiff is a manufacturing company operating out of
Davison, Michigan, and is engaged in the business of
making trailer products. Defendant James Hensley is
an inventor and designer. Defendant Sean Woodruff
was employed by Plaintiff as a sales and marketing
manager until 2007, when he left and formed
Defendant Propride. Defendant Propride is a
manufacturing company operating out of Grand
Blanc, Michigan, and engaged in the business of
making trailer products.

In 1994, Plaintiff and Defendant Hensley entered into
a Licensing Agreement (referenced in Plaintiff's
complaint, and provided by Defendant Hensley),
which allowed Plaintiff to manufacture and sell
Defendant Hensley's trailer hitch design in exchange
for cash, shares in Plaintiff, and a continuing
royalty.[FN1] Plaintiff sold Defendant Hensley's trailer
hitch under the name "Hensley Arrow" or "Arrow".
Plaintiff registered a trademark for the name
"Hensley" and has also trademarked the "Hensley
Arrow" graphic, both in 2003.

> FN1. Plaintiff claims that Plaintiff purchased
> the ongoing trailer hitch business of
> Defendant Hensley's company. Defendants
> deny this, and Plaintiff provides no
> documentary evidence.

Defendant Hensley split with Plaintiff in 2007, and
designed a new trailer hitch. He then licensed the
new design to Defendant Propride. Defendant
Propride markets this hitch as the "Propride Pivot
Point Projection Hitch". In advertising the hitch,
Defendant Propride has used Defendant Hensley's
name to describe his relationship with the company.

The uses that Plaintiff cites are as follows:

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2008 WL 2514060 (E.D.Mich.)
**2008 WL 2514060 (E.D.Mich.)**

Print and mail advertisements in which Defendant Propride says: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Jim Hensley. Now he has done it again and improved the performance of his old design."

An advertisement that states: "The ProPride hitch was designed and patented by Jim Hensley."

*2 The website of Propride includes a section on "The Jim Hensley Hitch Story", which explains Defendant Hensley's background and relationship to Defendant Propride.

An eBay.com listing which was entitled "Used Hensley Arrow Hitch? Buy New J. Hensley Design".

An internet domain name-www.jimhensleyhitch.com-which redirects users to Defendant Propride's website.

Plaintiff filed suit against Defendants for (1) statutory and (2) common law trademark infringement, (3) unfair competition resulting from the confusion of the trademarks, (4) breach of contract (against Defendant Hensley), (5) misappropriation of trade secrets (against the Propride Defendants) and (6) tortious interference with a business relationship.

Defendant Hensley filed a motion to dismiss, claiming that he has not violated any term of the contract referenced in Plaintiff's complaint, and that Plaintiff failed to state a claim against him for trademark violation, tortious interference, unfair competition or misappropriation of trade secrets, as the facts plead establish violations only as to the Propride Defendants.

The Propride Defendants filed a motion to dismiss, claiming that the use of Defendant Hensley's name is not a trademark infringement, and that Plaintiff has failed to state a claim for the unfair competition, misappropriation of trade secrets, and tortious interference claims.

Plaintiff subsequently filed the present motion for a preliminary injunction on the trademark infringement

claim..

**III. STANDARDS OF REVIEW**

*Motion to Dismiss Standard*

FED. R. CIV. P. 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted.""This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true. Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Tidik v. Ritsema,* 938 F.Supp. 416, 421 (E.D.Mich.1996). The Sixth Circuit has made it clear that "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."*Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). When faced with a FED. R. CIV. P. 12(b)(6) motion to dismiss, a district court,

> ... must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,*498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests."*Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A judge may not grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations.*Id.*

*3 *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993). Accordingly, to determine whether a complaint should be dismissed for failure to state a claim under Rule 12(b)(6), this Court must examine the applicable substantive law and the facts alleged in the plaintiff's complaint.

*Preliminary Injunction Standard*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                     Page 3
Slip Copy, 2008 WL 2514060 (E.D.Mich.)
**2008 WL 2514060 (E.D.Mich.)**

To determine whether to grant a preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and, (4) the impact of an injunction upon the public interest. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County,* 274 F.3d 377, 400 (6th Cir.2001). These four considerations "are factors to be balanced, not prerequisites that must be met."*Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 230 (6th Cir.2003).

## IV. ANALYSIS

*1) Trademark Infringement and Unfair Competition*

Plaintiff's claims of trademark infringement under the Lanham Act, trademark infringement under MICH. COMP. LAWS § 18.638, and unfair competition under 15 U.S.C. § 1125(a)[FN2] all employ the same "likelihood of confusion" test. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997) (employing the "likelihood of confusion" standard to a federal trademark infringement claim); *The Sports Authority v. Abercrombie & Fitch,* 965 F.Supp. 925, 934, fn. 5 (E.D.Mich.1997) (holding that "trademark infringement under Michigan common law is governed by the "likelihood of confusion" standard); *Champions Golf Club v. The Champions Golf Club,* 78 F.3d 1111, 1123 (6th Cir.1996) (holding that "[a]s in an action alleging infringement of a mark, likelihood of confusion is the essence of an unfair competition claim").

> FN2. Plaintiff has plead this claim as "False Designation of Origin" under 15 U.S.C. § 1125.

The essence of this standard is "whether the Defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."*Big Daddy's,* 109 F.3d at 280 (6th Cir.1997). The Sixth Circuit has held that "whether there is a likelihood of confusion depends on consideration of eight factors:

1. the strength of the plaintiff's mark;

2. the relatedness of the services;

3. the similarity of the marks;

4. the evidence of actual confusion;

5. the marketing channels used;

6. the likely degree of purchaser care;

7. the defendant's intent in selecting the mark; and

8. the likelihood of expansion of the product lines."

*Champions Golf,* 78 F.3d at 1116. These factors are not mathematically precise or equally weighted, but are to be used as a guide in determining whether "relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way."*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir.1991).

*4 The Lanham Act provides for several fair use defenses against a claim of trademark infringement. *See* 15 U.S.C. § 1115(b). The relevant statutory defense here is the allowance for the descriptive use of individual names. 15 U.S.C. § 1115(b)(4) ("the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin"). Fair use is a defense against both trademark infringement and unfair competition under 15 U.S.C. § 1125(a).*See, e.g., New York Mercantile Exchange v. IntercontinentalExchange,* 389 F.Supp.2d 527, 545 (S.D.N.Y.2005) ("Both 32(1) and 43(a) are subject to a defense of 'fair use.' ").

Applying the eight-factor test, it is clear that Plaintiff's alleged marks of "Hensley" and "Hensley Arrow" are strong and distinctive marks. *See Little Caesar Enters. v. Pizza Caesar,* 834 F.2d 568, 571 (6th Cir.1987) ("Fanciful and arbitrary marks are considered to be the 'strongest' or most distinctive marks"). Any party attempting to use them as labels

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2514060 (E.D.Mich.)
**2008 WL 2514060 (E.D.Mich.)**

Page 4

or trade names in the trailer or trailer hitch business would very likely cause actual confusion among the relevant customer base, and such use would likely constitute trademark infringement. However, Defendants are not being accused of marking their goods with Defendant Hensley's name-the extent of the use is in advertising his connection with the company.[FN3]

> FN3. Defendant Propride's first argument-that the use is not "in commerce" because it is not part of the name or packaging of the product-is patently incorrect, as the use in advertising is clearly "in commerce." *Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co.,* 153 F.2d 662, 667 (1st Cir.1946) (holding that "the essential wrong of trade-mark infringement, the appropriation of the good will of another's established mark, may be effectively accomplished by advertising matter associating that other's distinguishing mark with the product of defendant").

The use of an individual's name in a descriptive sense, as opposed to the use as a trade name, is acceptable under trademark law. *Compare Madrigal Audio Laboratories, Inc. v. Cello, Ltd.,* 799 F.2d 814, 822 (2d Cir.1986) (finding no infringement when Defendant advertised its relationship with an inventor whose name was a registered trademark owned by Plaintiff) *with E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291-92 (9th Cir.1992) (finding infringement where Gallo family name was used as a trade name to mark product). The First Circuit's analysis in *Cello* is instructive, finding that "even when a personal name has become a trade name it continues to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated" and the fair use exception applies. *Cello,* 799 F.2d at 822.

The Court will not engage in finding of fact regarding who is the rightful owner of the "Hensley" or "Hensley Arrow" marks, or what the scope of that ownership entails.[FN4] The Court will, as required, "construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true." *Meador,* 902 F.2d at 475.

> FN4. Defendants and Plaintiff argue over the validity of Plaintiff's registration, the expiration of their patents, and the specifics of Plaintiff's business relationship with Defendant Hensley. The Court does not need to resolve these factual conflicts to decide the motion.

*5 Even assuming that Defendant Hensley did sell the right to his name, "[w]hen an individual sells no more than the right to use his name as a trade name or trademark he is precluded only from using his personal name as part of that of another company or on other products, and not from taking advantage of his individual reputation (as opposed to the reputation of the company which bore his personal name as a trade name) by establishing a company which competes against the purchaser of the trade name, *or from advertising, in a not overly intrusive manner, that he is affiliated with a new company." Cello,* 799 F.2d at 823 (emphasis added). It is exactly this that Defendants are accused of, and therefore their use of Defendant Hensley's name falls under the "fair use" exception to the rule,[FN5] and Plaintiff's claims of infringement and unfair competition are defeated.

> FN5. The only use of "Jim Hensley" by Defendants that is somewhat questionable is the www.jimhensleyhitch.com website. However, the URL (1) uses Defendant Hensley's whole name, distinguishing it from Plaintiff's product, (2) relates directly to Defendant Hensley's affiliation with Defendant Propride and his hitch designs, and (3) does not attempt to link Plaintiff with Defendant Propride (there is no mention of anything to do with Plaintiff on Defendant Propride's website).

Thus, Plaintiff has failed to state a viable claim for both statutory and common law trademark infringement, and for unfair competition under the Lanham Act. Defendants' motions to dismiss are granted as to these claims, and they are dismissed.

*2) Breach of Contract*

As a threshold matter, in deciding this 12(b)(6) motion, the Court may review and consider contracts that are referenced in a party's pleadings, even if they

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

were not introduced by the party bringing the action. *See Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir.1997) (finding that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so ... [and] they are referred to in the plaintiff's complaint").

In order to establish a claim for common law breach of contract in Illinois, a plaintiff must allege and prove the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.*Henderson-Smith & Assoc., Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill.App.3d 15, 256 Ill.Dec. 488, 752 N.E.2d 33 (Ill.App.2001).

Plaintiff's complaint alleges four discernible contractual obligations:

(1) the sale of Defendant Hensley's business as a going concern, in February 1994 (Pl. Compl. at ¶ 18);

(2) the agreement that a new corporation would be formed and the company's hitches would be known as the "Hensley" hitch or the "Hensley Arrow", in February 1994 (*Id.* at ¶ 18, 256 Ill.Dec. 488, 752 N.E.2d 33);

(3); the agreement that Plaintiff would use the trademarks "Hensley" and "Hensley Arrow", in February 1994 (*Id.* at ¶ 19, 256 Ill.Dec. 488, 752 N.E.2d 33); and

(4) the agreement that the "Hensley" trademark was the property of Plaintiff and Defendant Hensley would not "undertake any action to misappropriate or dilute the Hensley trademark", established by conduct over the course of 10 years (*Id.* at ¶ 38).

Defendant Hensley's primary argument-that the only contract at issue is the February 1994 license agreement-is rebutted by Plaintiff's complaint. Plaintiff alleges both a February 1994 agreement (or agreements) and an oral agreement ("established by conduct") relating to the trademarks at issue in this suit.

*6 However, it is also clear that Plaintiff has not alleged a breach of any term of the February 1994 agreement (or agreements) that it references in ¶ 18-19. Thus, Plaintiff's entire breach of contract claim rests on a violation of the alleged oral agreement requiring Defendant to abstain from diluting or misappropriating Plaintiff's trademark.

To succeed on this claim, Plaintiff would have to prove that Defendant Hensley diluted or misappropriated their trademark-the same exact issue as in the failed trademark infringement claim. According to the analysis in Part IV-I, *supra*, the use of Defendant Hensley's name qualifies as "fair use" even accepting all of Plaintiff's plead facts as true. Plaintiff's alleged trademarks were therefore not misappropriated. *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 2008 WL 1735371 (E.D.Mich.2008) ("misappropriation" is the same as "infringement" in a trademark claim). As for a claim of dilution, the Court applies a more stringent standard than in the infringement context, *Autozone v. Tandy Corp.*, 373 F.3d 786, 806 (6th Cir.2004) (holding that a "higher degree of similarity than is necessary in infringement claims"), and the finding of "fair use" likewise defeats any claim of dilution. *Herman Miller, Inc. v. A. Studio S.R.L.*, 2006 WL 2456218 (W.D.Mich.2006) (holding that the concept of fair use is applicable in cases of alleged dilution).

Proving Plaintiff's breach of contract claim would require a successful trademark infringement claim. Even accepting all of the facts plead in Plaintiff's complaint as true, Plaintiff cannot successfully state a claim for trademark infringement, and therefore Plaintiff's breach of contract claim fails, too. The motion to dismiss is granted in favor of Defendant Hensley on this claim, and it is dismissed.

### *3) The State Law Claims*

Plaintiff's remaining claims-tortious interference and misappropriation of trade secrets-are brought under state common law, with supplemental jurisdiction under 28 U.S.C. § 1367. As the Court has dismissed all of Plaintiff's federal law claims, the Court dismisses the remaining state law claims. *See, e.g., Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir.1996) (holding that when all federal claims have been dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims);

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2514060 (E.D.Mich.)
**2008 WL 2514060 (E.D.Mich.)**

Page 6

_United Mine Workers of Am. v. Gibbs,_ 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial ... the state claims should be dismissed as well").

*4) The Preliminary Injunction*

In light of the Court's disposition of the motions to dismiss, the motion for preliminary injunction is now moot, and is denied. *See Great Lakes Consortium v. Michigan,* 480 F.Supp.2d 977, 986 fn. 4 (W.D.Mich.2007).

**V. CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Hensley's Motion to Dismiss is **GRANTED,** Defendants Woodruff and Propride's Motion to Dismiss is **GRANTED,** and Plaintiff's Motion for Preliminary Injunction is **DENIED.** Plaintiff's complaint is hereby **DISMISSED.**

**\*7  IT IS SO ORDERED.**

E.D.Mich.,2008.
Hensley Mfg., Inc. v. Propride, Inc.
Slip Copy, 2008 WL 2514060 (E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.