IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEVRY INC. AND GLOBAL EDUCATION INTERNATIONAL, INC. | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 08 CV 3280<br>)<br>) HONORABLE DAVID H. COAR |
| UNIVERSITY OF MEDICINE AND HEALTH SCIENCES – ST. KITTS | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs DeVry Inc. and Global Education International, Inc. ("Plaintiffs") bring this action against Defendant University of Medicine and Health Sciences – St. Kitts ("Defendant" or "UMHS") alleging trademark infringement in violation of Section 32(a) of the Trademark Act, 15 U.S.C. § 1114(a), false representation and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, and a violation under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. Defendant now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is **DENIED**.

**BACKGROUND**

Plaintiff, DeVry Inc. ("DeVry"), is a Delaware corporation having an address of One Tower Lane, Oakbrook Terrace, Illinois 60181. Plaintiff, Global Education International, Inc. ("Global"), is a corporation organized under the laws of Barbados having an address of Parker House, Wildey Business Park, Wildey Road, St. Michael, Barbados. Global is a subsidiary of DeVry. UMHS is an educational institution which maintains an administrative office at 460 W.

1

34th Street, 12th Floor, New York, New York 10001. This Court has personal jurisdiction over UMHS, *inter alia,* pursuant to 735 ILCS 5/2-209 in that UMHS has committed an intentional tortious act in the State of Illinois which constitutes the subject matter of this action, and has transacted business within the State of Illinois.

Plaintiffs, through their related companies, own and operate a medical school under the name Ross University School of Medicine and a veterinary school under the name Ross University School of Veterinary Medicine (collectively, "Ross University"). Compl. ¶ 8. Global is the owner of the trademarks and service marks ROSS and ROSS UNIVERSITY, relating to educational services and related goods and services. *Id.* at ¶ 9-16. Global, through its predecessors in interest, has been using the marks ROSS and ROSS UNIVERSITY since long before UMHS existed. *Id.* at ¶ 22.

Ross University medical school offers educational courses to medical students to prepare them for a career in medicine, and the veterinary school for careers in veterinary medicine. *Id.* at ¶ 23, 27. The medical and veterinary schools are advertised and promoted under the ROSS mark and the ROSS UNIVERSITY mark throughout the United States, including the State of Illinois. *Id.* at ¶ 24, 28. Plaintiffs' primary market for the medical and veterinary schools is the U.S, and Plaintiffs' medical and veterinary school services are directed to U.S. customers. *Id.* at ¶ 25-26, 29-30. Plaintiffs, through their related companies, have continuously used the ROSS and ROSS UNIVERSITY marks in commerce to identify and distinguish their goods and services from the goods and services of others. *Id.* at ¶ 31-32. Plaintiffs, through their related companies, have expended time, money, effort and resources in advertising and promoting throughout the United States the goods and services offered under the ROSS and ROSS UNIVERSITY marks,

including the State of Illinois. *Id.* at ¶ 33. ROSS and ROSS UNIVERSITY are distinctive marks of educational services in the fields of medicine and veterinary medicine. *Id.* at ¶ 35-37.

Defendant UMHS is a newly formed medical school. *Id.* at ¶ 38. UMHS began promoting its medical school educational services in or about September of 2007, and classes began in May of 2008. *Id.* at ¶ 39-40. UMHS has promoted its educational services within the State of Illinois, including at the Benedictine University Health Professions Fair on March 26, 2008, in Lisle, Illinois. *Id.* at ¶ 41. UMHS shares a campus in the Caribbean nation of St. Kitts and Nevis with a nursing school which has been named "International University of Nursing" or "Robert Ross International University of Nursing" ("IUON") at various times over the past three years. *Id.* at ¶ 42. The combined UMHS/IUON campus is located on land near the Ross University School of Veterinary Medicine campus. *Id.* at ¶ 43. UMHS and IUON share most or all of the same ownership group, administrators, and administrative offices. *Id.* at ¶ 44.

Plaintiffs and IUON are engaged in litigation captioned "DeVry Inc. and Global Education International, Inc. v. International University of Nursing d/b/a Robert Ross International University of Nursing," No. 06 C 3364 in the United States District Court for the Northern District of Illinois (the "IUON Action"). The IUON Action includes trademark infringement and unfair competition claims that, among other things, IUON is unfairly trading on the established reputation of Ross University. *Id.* at ¶ 45. The case was tried before Judge Guzman in June 2008 and is in post-trial briefing.

Plaintiffs give several examples supporting the complaint's allegations. UMHS has promoted its medical school services using letterhead which contains the logo "UMHS – Founded by Dr. Robert Ross." *Id.* at ¶ 47. A sign at the entrance to the combined UMHS/IUON campus states "Founded by Dr. Robert Ross." *Id.* at ¶ 48. The first text page of a UMHS printed

brochure focuses on the past success of Ross University and mentions Ross University four separate times. *Id.* at ¶ 51 (e.g., "Dr. Robert Ross, founder and former owner of Ross University School of Medicine, is excited to announce the opening of his new medical school . . . . Under his guidance, Ross University grew into one of the largest medical and veterinary schools in the world."). At various times, the home page of the UMHS website focused on the past success of Ross University, including mentioning Ross University four separate times. *Id.* at ¶ 52. Job position advertisements for UMHS faculty have stated that UMHS is "established by the founder and former owner of Ross University School of Medicine." These advertisements also instruct applicants to reply to an e-mail address at the "ross-central.com" domain, *id.* at ¶ 53, which, Plaintiffs contend, imply that UMHS is run by the "central" administration of Ross University. A letter from UMHS President Warren Ross to perspective students discusses the past success of Ross University and mentions Ross University four separate times within two paragraphs. *Id.* at ¶ 54 (using same language as the printed brochure quoted above). On September 28, 2007, a registered user of the internet web site *ValueMD.com* posted a message to a community forum dedicated to UMHS on that site. The user, having the screen name "eastern2western," stated "I think Ross should have just merged his new buildings [i.e. the UMHS/IUON campus] with the old school instead of starting everything from scratch again because it take a while to get accepted by the different states." *Id.* at ¶ 57. Plaintiff contends that this statement shows an erroneous belief that UMHS and Ross University were then affiliated and under the same ownership.

UMHS is not associated with, sponsored by, approved by, or otherwise connected with Plaintiffs, or Ross University School of Medicine, or Ross University School of Veterinary Medicine. *Id.* at ¶ 55.

4

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625. Although "[a]ll the complaint need do to withstand a motion to dismiss for failure to state a claim is outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants," *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 459 (7th Cir. 2007) (quoting *Brownlee v. Conine,* 957 F.2d 353, 354 (7th Cir.1992) (internal citations and quotation marks omitted)), surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (citing *Twombly*).

## ANALYSIS

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), contending that even accepting all the facts in the allegations as true, there is no plausible basis for relief. Defendant argues that there are only two types of infringing uses of Plaintiffs'

trademarks alleged in the complaint, both of which are subject to fair use affirmative defenses. According to Defendant, the first category of infringing use is the use of the phrase "Founded by Dr. Robert Ross" below the UMHS logo on, *inter alia*, Defendant's letterhead and the sign at the entrance to the UMHS campus. Defendant contends that the phrase "Founded by Dr. Robert Ross" is merely descriptive, and therefore is protected by the Lanham Act's statutory fair use defense, 15 U.S.C. § 1115(b)(4). In the second category of infringing use are the statements by Defendant that Dr. Robert Ross is the founder and former owner of Ross University. These, Defendant argues, are protected "normative" fair uses of Plaintiffs' trademarks.

Defendant is asking the Court to rule, before the start of discovery, that Defendant will inevitably prevail in proving that *all* of its uses of Plaintiffs' trademarks—even those currently unknown uses that would be revealed through discovery—constitute fair use. Defendant in effect argues that Plaintiffs have plead themselves out of court by admitting all the ingredients of a so-called "impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).") (citations omitted; emphasis in original). In this context, a defense is impenetrable when the plaintiff would need to "contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Conversely, a defense is not impenetrable where the plaintiff's recovery is still plausible even under the facts taken from the face of the complaint and its exhibits. *Id*.

For several reasons, Defendant's fair use defense is not the type of impenetrable defense that can defeat a complaint at the motion to dismiss stage. First, Defendant's analysis rests on two presumptions that this Court need not (and does not) accept: that the examples of alleged

trademark violations in the complaint are a complete listing of Defendant's infringements; and that those violations alleged in the complaints all fit within one of the two categories of infringing use described above (and are therefore susceptible to the two categories of fair use defenses also described above). Both of these presumptions are incorrect: the first because Plaintiffs' actual allegations are broader than just the examples described in the complaint, Compl. ¶ 46, 49, 50 (referring generally to other infringing uses), and fact discovery could reveal different new examples of infringing use; the second because the Defendant's categorization of the alleged infringing uses is conclusory and also simply inaccurate, as it overlooks uncategorized examples like the "ross-central.com" domain name.

Second, even if the Court were to accept Defendant's presumptions, Defendant's fair use defense arguments would not defeat Plaintiffs' complaint at the motion to dismiss stage. Each of Defendant's two fair use arguments is examined below.

### 1. Statutory Fair Use Defense

The Lanham Act's statutory fair use defense provides

> that the use of the name, term, or device charged to be an infringement is a use, *otherwise than as a mark*, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . .

15 U.S.C. § 1115(b)(4) (emphasis added). As the italicized portion above suggests, the statutory fair use defense applies only names/terms/devices when they are not being used as service marks. Defendant argues that its use of the phrase "Founded by Dr. Robert Ross" under the UMHS logo on its stationery and its campus entrance sign is "descriptive" within the meaning of the Lanham Act because it "merely provides information about the founder of UMHS . . . and

[is] not being used as a service mark for the educational services of the school." Def.'s Mot. to Dismiss 8.

However, whether a specific use is "otherwise than as a mark" is a fact specific determination that the Court is not prepared to make at this early stage in litigation. *Sunmark Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058 (7th Cir. 1995) (whether a word is used as a description or as a mark is a factual question to be determined by district court). Defendant appears to recognize the importance of the factual determination, and cites treatises on the relevance of "the nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks . . . ." in determining whether or not a word or phrase has been used descriptively. Def.'s Mot. to Dismiss 8 (citing *Restatement (Third) Unfair Competition*, § 28 at Comment A). Defendant then offers a hasty gloss on the typographical and graphic design elements of the UMHS logo, concluding that the smaller "Founded by Dr. Robert Ross" text underneath it is "informational" and "descriptive." Def.'s Mot. to Dismiss 8. Plaintiffs, on the other hand, argue that the text is not merely a way to describe Defendant's education services but "part of a coordinated campaign to use this short, isolated phrase – not even a complete sentence – as a source-identifier of Defendant's educational services. This is the essence of use as a trademark." P.'s Resp. to Def.'s Mot. to Dismiss 6. This is a factual dispute that must be resolved by the factfinder after discovery.

2. **Normative Fair Use Defense**

Defendant argues that the statements contained in the UMHS brochure and in correspondence that Dr. Robert Ross was the founder and former owner of Ross University School of Medicine are not trademark or service mark uses because they are normative fair uses. The nominative fair use

8

defense is a non-statutory doctrine that applies when the defendant uses the plaintiff's trademarks to refer to the plaintiff's goods or services in a non-confusing manner. *New Kids On the Block v. News America Publishing, Inc*., 971 F.2d 302, 308 (9th Cir. 1992) (*USA Today* advertisement inviting readers to vote which New Kid on the Block was "sexiest" was normative fair use of plaintiff's trademark). The situations it covers are those "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *Id.* "Such use is fair because it does not imply sponsorship or endorsement by the trademark holder." *Id*. While the Seventh Circuit has not explicitly adopted the normative fair use doctrine, lower courts have applied the Ninth Circuit's *New Kids* three-part test for determining when the nominative fair use defense applies:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id*.; *see, e.g., World Impressions Corp. v. McDonald's Corp.*, 235 F.Supp.2d 831, 844 (N.D. Ill. 2002).

Even if this Court were bound by the normative fair use doctrine, which it is not, Defendants have not demonstrated that it applies to the examples of allegedly infringing use that Plaintiffs cite in their complaint. At the least, the second and third prongs of the *New Kids* test have not been met. Defendant's brochure name-drops "Ross University" four times in the first hundred words, as does its website. Compl. Exs. I, J. "Ross University" appears at the same frequency in the "Introduction" section of a letter sent by UMHS to prospective students. Compl. Ex. L. Whether these uses are only so much as is "reasonably necessary to identify the product or service," satisfying the second prong of the *New Kids* test, or attempts-by-saturation

9

to suggest Ross University's sponsorship or endorsement of UMHS, failing the third prong, is a factual determination that the Court will make after discovery.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

Enter:
/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** February 3, 2009